**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

**vs.** **8:26-CR-69 (MAD)**

**NILAM KIRANSINH CHAVDA,**

**Defendant.**

**and** **8:26-CR-70 (MAD)**

**HEENABEN SURESHBHAI PATEL,**

**Defendant.**

---

**APPEARANCES:** **OF COUNSEL:**

**OFFICE OF THE UNITED STATES ATTORNEY** **DOUGLAS G.N. COLLYER, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for the Government

**OFFICE OF THE FEDERAL PUBLIC DEFENDER** **ANNE L. LAFEX, FPD** **JAMES P. EGAN, AFPD**
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

These two cases come before the Court on appeal from convictions to one count of eluding examination and inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(2) against Defendants Nilam Kiransinh Chavda ("Chavda") and Heenaben Sureshbhai Patel ("Patel")

(collectively, "Defendants"). Judgment was entered following a one-day bench trial before Magistrate Judge Gary L. Favro. *See United States v. Chaudhari*, 8:26-MJ-07, Dkt. Nos. 21, 22, 29. Defendants were each sentenced to time served. *See id.*, Dkt. Nos. 21, 22. The Government opposes Defendants' appeals.

For the reasons that follow, Defendants' convictions shall be vacated.

## II. BACKGROUND

The following facts are derived from the one-day bench trial transcript. *See Chaudhari*, 8:26-MJ-07, Dkt. No. 29.[1] The Government first presented the testimony of Adam Grennan, a United States Border Patrol Agent stationed in Champlain, New York. *See id.* at 6. Greenan explained there are cameras along the United States/Canda border which transmit photographs to KAD 640, Border Patrol's dispatch center, which will then contact Border Patrol officers assigned to the area where the photograph was taken. *See id.* at 7-8. Greenan testified that "Perry Mills Road is a high-volume area . . . . [I]t's an east-west road. It runs parallel with the border and it has multiple north-south roads that dead-end at the border, so it's a quick – quick way to enter and get picked up on Perry Mills." *Id.* at 8-9. Greenan stated that Perry Mills Road is approximately half a mile from the border and two-and-a-half to three miles from a port of entry. *See id.* at 10.

On January 11, 2026, Greenan "was advised that a picture came in of multiple subjects traveling south in the Thibodeau Road area, which is a north-south road off of Perry Mills." *Id.* at 10-11. Greenan had received a call from KAD 640 advising him of such. *See id.* at 11. When he arrived at the location where the pictures were taken, he "parked on Perry Mills Road. [He]

[1] Defendants provided a copy of the transcript with their appeals. *See Chavda*, No. 8:26-CR-69, Dkt. No. 3-1; *Patel*, No. 8:26-CR-70, Dkt. No. 2-1. For ease of reference, the Court will cite to the transcript included in Magistrate Judge Favro's case. Page citations are to the pagination generated by CM/ECF in a page's header.

looked through [his] night vision and [he] could see several subjects walking south from the border." *Id.* at 13. Greenan and another agent "got in front of them, confronted them. They briefly tried to run, but gave up pretty fast, and [the agents] made the arrest." *Id.* at 18. The agents "asked the subjects where they're from. Somebody responded they're from India." *Id.* The agents also "asked if they were coming from Canada. They said yes. [The agents] asked if they had any Immigration documents with them that would allow them to be here, and they said no." *Id.* Based on his training, experience, observations, and conversations, Grennan "believed they just illegally entered from Canada." *Id.* The individuals were transported to a law enforcement station for questioning. *See id.* at 18-19. Five people were apprehended. *See id.* at 22.

Greenan testified that he apprehended the individuals less than half a mile from the border. *See id.* at 20. He observed footprints in the snow coming down from the border. *See id.* Greenan stated that there is no fence along that part of the border. *See id.* at 21.

According to Greenan, neither Defendant Chavda nor Patel had "official authorization to enter the United States on January 11, 2026." *Id.* at 25. Greenan prepared and signed an I-213 form for each Defendant, which "is a record of inadmission for deportables. It's a form that largely holds their biographical data, charges that are against them. It will have the encounter attached to it, as well." *Id.*

The Government then presented the testimony of Supervisory Border Patrol Agent Gerard Spinner. *See id.* at 47. Spinner explained that Form I-213 is "labeled Record of Deportable and Inadmissible Alien. It's a form to track all of their biographical information. It has a photo on it. It has the narrative of what had happened, that event." *Id.* at 49. Defense counsel objected to the admission of the I-213 forms into evidence on behalf of both Defendants. *See id.* at 52. Counsel argued that the documents contained hearsay insofar as they read, "Country of Citizenship, India,"

because that information had to come from some unknown source. *Id.* at 52-58. Magistrate Judge Favro admitted the I-213 forms because "it does satisfy the business record exceptions to the hearsay rule." *Id.* at 59. Spinner then testified that he did not complete the forms nor did he speak to Defendants. *See id.* Finally, Spinner testified that Chavda's Form I-213 indicates that she was apprehended two miles from a port of entry and Patel's Form I-213 indicates that she was apprehended two and a half miles from a port of entry. *See id.* at 67.

The Government argued at the conclusion of the trial that it had proven beyond a reasonable doubt that Defendants "are aliens and citizens of another country, and that they unlawfully entered the United States." *Id.* at 69. As to "eluding," the Government argued:

> [E]very second [Defendants] are in the United States without inspection, they're eluding examination. There is a port of entry two miles west where inspections occur, but these two defendants, every minute and every second that they are in the United States without inspection, they are actively eluding examination. So[,] there is no argument with respect to issues between 1325(a)(2) and 1325(a)(1). They're in the country. They snuck in because they knew they could not enter lawfully, so they attempted to elude.

*Id.* at 69-70.

Defense counsel argued that "[b]ecause the processes of examination and inspection occur at open ports of entry where Immigration Officers are located, a defendant charged with violating 1325(a)(2) must have engaged in the charged conduct in an open port of entry." *Id.* at 72. Counsel continued, "[R]eading 1325(a)(2) to permit a defendant to be found to have eluded examination or inspection by crossing at a time or place other than as designated by Immigration Officers, which is the theory of the Government in this case, would render Section 1325(a)(1) superfluous." *Id.* at 73. Defense counsel noted that "[t]his reading of 1325(a)(2) has been upheld by the Ninth Circuit in *United States v. Corrales-Vazquez*, 931 F.3d, 944, [(9th Cir. 2019]), and

adopted by District Courts, including the District of Nebraska and the District of Maine." *Id.* at 74. Counsel argued that the Government did not adduce any evidence that Defendants crossed the border at a port of entry. *See id.* at 74-75. Defense counsel also argued that there was insufficient evidence to prove "that the defendants here are citizens of India or aliens as relevantly defined." *Id.* at 75.

Magistrate Judge Favro "reject[ed] the defendants' arguments with regard to the structure and intent and application of Section 1325." *Id.* at 76. He stated that "[t]here are proper ways to enter this country. There are improper ways to enter this country. And what we're dealing with under Section 1325 is what occurs when there is an improper entry." *Id.* at 77. Magistrate Judge Favro held that "[t]he Government has established beyond a reasonable doubt -- which, as we all know, is not every doubt, not one thousand percent, but beyond a reasonable doubt -- that the defendants are citizens of India." *Id.* at 78. He also noted that "[a]lthough the defendants have no burden of proof, it's a stretch for the Court to believe that if they had such status, it wouldn't be presented in some form in this litigation." *Id.* Magistrate Judge Favro found that the Government satisfied its burden of proof because "[t]he defendants are citizens of India. They entered the United States and were found in the United States, and at no time did they submit themselves to inspection or examination by Immigration officials . . . ." *Id.* at 79.

Defendants raise three issues on appeal: (1) whether there was sufficient evidence to support their convictions under 8 U.S.C. § 1325(a)(2) where the Government failed to prove they were aliens who knowingly entered the country through a port of entry; (2) whether Magistrate

Judge Favro erred in admitting a portion of the Form I-213s as evidence; and (3) whether Magistrate Judge Favro improperly shifted the burden of proof onto Defendants.[2]

## III. DISCUSSION

"Magistrate judges have jurisdiction 'to try persons accused of, and sentence persons convicted of, misdemeanors. . . .'" *United States v. Radin*, 821 Fed. Appx. 53 (2d Cir. 2020) (summary order) (quoting 18 U.S.C. § 3401(a)). "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." FED. R. CRIM. P. 58(g)(2)(B). "In an appeal of a criminal conviction by a magistrate judge, '[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge.'" *United States v. Knauer*, 707 F. Supp. 2d 379, 383 (E.D.N.Y. 2010) (quoting FED. R. CRIM. P. 58(g)(2)(D)). "The court of appeals 'review[s] de novo the district court's legal conclusions and accept[s] its factual determinations, unless clearly erroneous, viewing those facts in the light most favorable to the government.'" *Id.* (quoting *United States v. Gandia*, 424 F.3d 255, 261 (2d Cir. 2005)); *see also United States v. Marquez*, 979 F. Supp. 2d 326, 331 (E.D.N.Y. 2013) ("On appeal, this Court reviews questions of law de novo and accepts the Magistrate Judge's factual determinations, unless clearly erroneous").

Defendants were found guilty of having eluded examination and inspection by immigration officers in violation of 8 U.S.C. § 1325(a)(2). That provision of the Immigration and Nationality Act criminalizes three kinds of "improper entry by [an] alien." 8 U.S.C. § 1325(a)(2).

---

[2] *See Chavda*, No. 8:26-CR-69, Dkt. No. 3; *Patel*, No. 8:26-CR-70, Dkt. No. 2. The briefs submitted on behalf of each Defendant are identical, except for the change of their names for the appropriate case. Therefore, for ease of reference, the Court will cite the Defendants' briefs as "Defs. Br." Likewise, the briefs submitted on behalf of the Government in each case are identical, except for the change of Defendant's names for the appropriate case. *See Chavda*, No. 8:26-CR-69, Dkt. No. 6; *Patel*, No. 8:26-CR-70, Dkt. No. 5. Therefore, for ease of reference, the Court will cite the Government's briefs as "Gov't Br."

"It is a crime to enter the United States at an unauthorized time or place . . . . It is a crime to elude examination or inspection. . . . And it is a crime to obtain entry via misrepresentation." *United States v. Cuadra Soto*, No. 4:25-MJ-3267, 2026 WL 123220, *3 (D. Neb. Jan. 16, 2026) (citing 8 U.S.C. § 1325).

As explained by Defense counsel, the Ninth Circuit held in 2019 "that to 'elude[ ] examination or inspection by immigration officers' in violation of § 1325(a)(2), the alien's conduct must occur at a designated port of entry that is open for inspection and examination." *United States v. Corrales-Vazquez*, 931 F.3d 944, 954 (9th Cir. 2019); *see also* Defs. Br. at 16-20.

The Government contends "*Corrales-Vazquez* stands alone as no other United States Court of Appeals or District Court has issued such a holding limiting the application of section 1325(a)(2) to ports of entry." Gov't Br. at 12. The Government filed its brief on April 3, 2026. Prior to that date, two magistrate judges agreed with *Corrales-Vazquez*. *See Chaudhari*, 8:26-MJ-07, Dkt. No. 29 at 74 (citing *United States v. Vega*, No. 1:25-MJ-399, 2025 WL 3558747, *4 (D. Me. Dec. 12, 2025) ("The Government alleges that Defendant eluded inspection and examination in violation of 8 U.S.C. § 1325(a)(2). The Government, however, does not allege and the record does not support a finding that Defendant's conduct occurred at a port of entry, where inspections and examinations occur. The Government, therefore, has not alleged facts that would constitute a violation of 8 U.S.C. § 1325(a)(2)"); *Cuadra Soto*, 2026 WL 123220, at *3).

As articulated by the magistrate judge from the District of Nebraska, "[i]f a person eludes inspection by entering in an unauthorized place, they have committed the crime in (a)(1)." *Cuadra Soto*, 2026 WL 123220, at *3. "If this action is also understood as eluding inspection under (a)(2), (a)(2) swallows (a)(1) and renders the crime of entry in (a)(1) superfluous." *Id.* "The more logical reading of the statutes suggest that Congress intended to criminalize the two

ways a person can illegally enter the United States: by (1) avoiding the designated port of entry altogether or (2) deceiving immigration officials by eluding inspection or lying to officials during the inspection." *Id.*

Since the time Defendants' appeals became fully briefed, numerous district judges across the country have agreed with the Ninth Circuit's decision in *Corrales-Vazquez*, including three district judges from the Northern District of New York.

District Judge Anne M. Nardacci vacated a defendant's § 1352(a)(2) conviction for lack of venue. *See United States v. Espinoza-Cabrera*, 831 F. Supp. 3d 167, 170 (N.D.N.Y. 2026). In that case, the "[d]efendant argue[d] that venue in the Northern District of New York is improper because [the d]efendant entered the United States in Florida, and therefore, no part of the crime was committed within the Northern District of New York." *Id.* at 171. "The Government assert[ed] that venue in this District is proper because eluding examination or inspection is a continuing offense and, therefore, Defendant committed this crime in the Northern District of New York by continuing to remain in the United States without submitting to inspection or examination." *Id.* In holding that § 1325(a)(2) is not a continuing offense, Judge Nardacci stated that "'[b]y differentiating (a)(1)—which prohibits entry at any time or place other than as designated by immigration officials—as an improper time or place offense, it logically follows that (a)(2) and (a)(3) can only occur at a proper time or place, i.e.[,] at a designated port of entry.'" *Id.* at 174 (quoting *Guzman Tejeda*, 2026 WL 1005634, at *5). She agreed with other courts that "if, as the Government argues, merely crossing into the United States without examination or inspection violates subsection (a)(2), subsection (a)(1) becomes superfluous, and is subsumed entirely within subsection (a)(2) because 'every violation of [Section] 1325(a)(1) for entering at a non-designated time or place would have also been a violation of [Section] 1325(a)(2) for eluding

examination or inspection.'" *Id.* (quoting *Corrales-Vazquez*, 931 F.3d at 950). Therefore, Judge Nardacci agreed that "[u]nder Section 1325(a)(2), a defendant's conduct—'eluding examination or inspection by immigration officers'—must occur at a designated port of entry that is open for inspection and examination." *Id.* at 176 (citations omitted).[3]

Chief District Judge Brenda K. Sannes has held the same. *See United States v. Pereira*, No. 5:26-CR-112, 2026 WL 1724480, *1 (N.D.N.Y. June 15, 2026). In affirming a magistrate judge's dismissal of a defendant's § 1325(a)(2) charge, Chief Judge Sannes reiterated the Government's argument "that '[o]ne may "elude" an examination or inspection where such examinations or inspections occur, like an open port of entry, or one may elude an examination or inspection by avoiding the location at which such examinations and inspections occur." *Id.* at *5 (citation omitted). The Government averred, "The effect is the same. It would make no sense to criminalize one and not the other.'" *Id.* (citation omitted). The Government presents word-for-word arguments in the present appeals. *See* Gov't Br. at 13. Chief Judge Sannes rejected the Government's argument because "Congress did criminalize [']the other[']: § 1325(a) makes it a crime to 'enter[ ] or attempt[ ] to enter the United States at any time or place other than as designated by immigration officers.'" *Pereira*, 2026 WL 1724480, at *5 (quoting 8 U.S.C. § 1325(a)(1)). Therefore, Chief Judge Sannes concluded that "[w]hether § 1325(a)(2) is read in its immediate context, between two entry-related, non-continuing offenses, or viewed in the wider context of its surrounding provisions, which contain continuing offenses, the Court finds 'eludes' unambiguously means eludes examination or inspection at a time and place where required, such as a port of entry." *Id.* at *6.

---

[3] Judge Nardacci's decision has been appealed to the Second Circuit.

District Judge Elizabeth C. Coombe vacated a § 1325(a)(2) conviction on the same grounds. *See United States v. Muscadin*, No. 8:26-CR-103, 2026 WL 1972081, *1 (N.D.N.Y. July 8, 2026). She first noted that "[t]he parties have not identified any Supreme Court or Second Circuit authority addressing whether § 1325(a)(2) is limited to conduct at ports of entry, and the Court has not identified any." *Id.* at *2. After reviewing *Corrales-Vazquez* and the various lower court decisions, Judge Coombe "conclude[d] that § 1325(a)(2) is limited to criminal conduct at times and places where examination and inspection are required including ports of entry." *Id.* at *3. Judge Coombe vacated the defendant's conviction after explaining that "even viewing the evidence in the light most favorable to the government, there is no evidence that [the d]efendant was ever at a place where examination and inspection are required." *Id.* at *7. Rather, there was "evidence that [the d]efendant's boots were muddy and his pants were wet indicating that he had crossed through the woods, not a port of entry" and the defendant was apprehended "approximately two and one-half to three miles away from the nearest port of entry." *Id.* (citations omitted).

The Court recognizes that, as cited by the Government in its brief, *see* Gov't Br. at 14, the Fifth Circuit has held that § 1325(a)(2) does "not require proof of entry[.]" *United States v. Montes-De Oca*, 820 Fed. Appx. 247, 251 (5th Cir. 2020) (per curiam). In that case, the Fifth Circuit affirmed a § 1325(a)(2) conviction where the defendant "walked northbound on the Bridge of the Americas Port of Entry, which connects Ciudad Juárez, Mexico with El Paso, Texas." *Id.* at 249. That case presents a different circumstance from this case, and those previously discussed, because that defendant was located at a port of entry.

Having reviewed the entire record in this matter as well as the current state of the case law, the Court finds no reason to deviate from the thorough and well-reasoned decisions of the

other judges within this District. The Court agrees that "[t]ogether, § 1325(a)(1) and § 1325(a)(2) make it a crime to enter the United States without submitting to examination or inspection." *Corrales-Vazquez*, 931 F.3d at 953. "But the two provisions operate separately based on the manner of entry. Section 1325(a)(1) covers conduct occurring at any time or place other than 'a designated port of entry when it is open for inspection.'" *Id.* (citation omitted). "Section 1325(a)(2) . . . covers the rest—conduct occurring at a designated port of entry that is open for inspection, where 'examination [and] inspection by immigration officers' take place." *Id.*; *see United States v. Abudaieh*, No. 3:26-CR-09, 2026 WL 2958358, at *4 (E.D. Ky. Oct. 1, 2026) ("[T]he Court could not find a single authority that disagreed with *Corrales-Vasquez*").

Viewing the evidence in the light most favorable to the Government, there is no evidence that Defendants were apprehended at a time and place where examination or inspection are required, such as a port of entry. Rather, Border Patrol agents testified that Defendants were located between two and two and a half miles away from a port of entry. *See Chaudhari*, 8:26-MJ-07, Dkt. No. 29 at 67. Indeed, the criminal complaint alleged that Defendants "illegally entered the United States at a place not designated as a port of entry . . . ." Dkt. No. at 2.[4] The Government does not dispute the lack of evidence regarding Defendant's entry into the country at a time and place designated for examination and inspection. The Government admits that "[t]he evidence showed that [Defendants were] photographed . . . two to three miles from the nearest port of entry." Gov't Br. at 11. The Government argues only that there is no requirement that "section 1325(a)(2) [] be exclusively violated at an open port of entry." *Id.* at 12. The Court disagrees and finds that the more logical reading of § 1325(a)(2) "unambiguously means eludes

[4] Agent Grennan testified that he did not write the affidavit that is attached to the complaint. *See Chaudhari*, 8:26-MJ-07, Dkt. No. 29 at 44-45. Rather, the complainant listed on the complaint is Border Patrol Agent Asta M. Amar. *See id.*, Dkt. No. 1.

examination or inspection at a time and place where required, such as a port of entry." *Pereira*, 2026 WL 1724480, at *6. "If a person eludes inspection by entering in an unauthorized place, they have committed the crime in (a)(1)." *Cuadra Soto*, 2026 WL 123220, at *3.

In a footnote, the Government avers that "[g]iven the facts adduced at trial in this matter, including the tracing of [Defendants'] footprints back to the international border, a violation of 8 U.S.C. § 1325(a)(1) is also supported by the facts here." Gov't Br. at 14 n.5. However, the Government presents no legal authority under which this Court is permitted to vacate a conviction under one subsection of a federal statute only to convict a defendant, for the first time on appeal, under a different subsection of that same statute. *Cf. United States v. Croessant*, 178 F.2d 96, 97 (3d Cir. 1949) ("But this conviction cannot be sustained for violation of some other section because the defendant was specifically charged under Section 145(b)"); *United States v. Johnson Contracting of WNY, Inc.*, No. 11-CR-00241, 2012 WL 5943176, *3 (W.D.N.Y. Sept. 18, 2012), *R. & R. adopted*, 2012 WL 5943328 (W.D.N.Y. Nov. 27, 2012) ("The Indictment permissibly charges defendant under both clauses, "and a conviction ... will be sustained if the evidence justifies a finding that the statute was violated in *any* of the ways alleged"") (quoting *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir. 1973)).

Defendants were charged with violation subsection (a)(2) of 8 U.S.C. § 1325. They were convicted under that same subsection of the statute. Ultimately, because a conviction under 8 U.S.C. § 1325(a)(2) requires proof that Defendants eluded examination or inspection at a time and place where required, such as a port of entry, and no such evidence exists in the cases now before the Court, Defendants' convictions must be vacated.[5]

[5] Because the Court has concluded that vacatur of the convictions is warranted on the specific ground set forth in this Memorandum-Decision and Order, the Court declines to address Defendants' other arguments. *See United States v. Lee*, 549 F.3d 84, 93 (2d Cir. 2008).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' convictions are **VACATED**; and the Court further

**ORDERS** that this case is **REMANDED** to Magistrate Judge Favro with instructions to enter judgments of acquittal; and the Court further

**ORDERS** that this Memorandum-Decision and Order shall be filed in both cases: *United States v Chavda*, No. 8:26-CR-69 and *United States v. Patel*, No. 8:26-CR-70; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 23, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge